REAL ESTATE MORTGAGE FOR NEW YORK                              CE 3197

THIS MORTGAGE is made and entered into January 27, 1988, by Monticello, New York, Villas Limited Partnership whose post office address is 180 South Washington St., Suite 200, Falls Church, Virginia 22046, herein called "Borrower", and the United States of America, acting through the Farmers Home Administration, United States Department of Agriculture, with an office at Room 871, Federal Building, 100 South Clinton Street, Syracuse, New York 13260, herein called "Government", and:

WHEREAS the Borrower is indebted to the Government as evidenced by one or more promissory note(s) or assumption agreement(s), herein called the "Note", which has been executed by the Borrower, is payable to the order of the Government, may provide for the deferral and capitalization of interest plus principal (described below as "Maximum Amount Financed"), authorizes acceleration of the entire indebtedness at the option of the Government upon any default by Borrower, and is further described as follows:

| Date of Instrument | Principal Amount | Annual Rate of Interest | Maximum Amount Financed | Due Date of Final Installment |
|---|---|---|---|---|
| March 9, 1987 | $1,499,900 | 8.50% | $1,510,171 | March 9, 2037 |

The Government may assign the Note at any time. The Government may also insure payment of the Note pursuant to the Consolidated Farm and Rural Development Act, or Title V of the Housing Act of 1949, or any other statute administered by the Farmers Home Administration.

And it is the purpose and intent of this instrument that, among other things, at all times when the note is held by the Government, or in the event the Government should assign this instrument without insurance of the note, this instrument shall secure payment of the note; but when the note is held by an insured holder, this instrument shall not secure payment of the note or attach to the debt evidenced thereby, but as to the note and such debt shall constitute an indemnity mortgage to secure the Government against loss under its insurance contract by reason of any default by Borrower;

And this instrument also secures the Borrower's obligations and covenants under other instruments delivered in connection with the loan evidenced by the note, including the Borrower's Loan Agreement, Security Agreement, and any deferral, reamortization, rescheduling or consolidation subsequent hereto. The Note, Loan Agreement, Security Agreement and this mortgage together with any supplements, attachments, modifications or additions are collectively referred to as the "Loan Instruments."

"THIS MORTGAGE IS NOT BEING TAKEN TO SECURE A NEW DEBT, BUT TO CORRECT THE DESCRIPTION OF THE PROMISSORY NOTE CONTAINED IN THE MORTGAGE BEING CORRECTED; WHICH WAS RECORDED ON MARCH 12, 1987 IN BOOK 1265 OF MORTGAGES AT PAGE 335."

Received of the mortgagee named in the within instrument $............, being the amount of the tax imposed thereon and paid at the time of the recording thereof.
Special additional tax
$............
Dated: FEB 02 1988
JOE PURCELL

LIBER 1347 PAGE 016

And the debt instruments executed at the time of loan closing constitutes an obligation on the part of the Government to disburse all funds at one time or in multiple advances, provided the funds are for purposes authorized by the Government at the time of loan closing. This obligatory commitment takes priority over any intervening liens or advances by other creditors regardless of the provisions of the State laws involved.

NOW THEREFORE, in consideration of the loan(s) the Borrower hereby mortgages, assigns, grants and conveys to the Government, the following property in Sullivan County(ies), New York:

All that tract or parcel of land situate in the Village of Monticello, Town of Thompson, County of Sullivan, and State of New York, being lands of Martin and Sydelle Rozbruch, more particularly bounded and described as follows:

BEGINNING at an iron pin set on the approximate northeasterly bounds of West Broadway at the most westerly corner of lands now or formerly of Stein (Deed Liber 953 at Page 1), and running thence from said point of beginning along the northwesterly bounds of said Stein Parcel, North 35 degrees 54 minutes East 371.40 feet to an iron pin set in the center of a stone wall at the most northerly corner of said lands of Stein; thence running generally along the center of said stone wall evidencing the southwesterly bounds of lands of Levinson (Deed Liber 1085 at Page 183), North 45 degrees 39 minutes West 164.00 feet to a point in said stone wall at the most easterly corner of a 50 foot by 60 foot parcel of land excepted by Crain and others in a deed to Samuel Brams recorded in the Sullivan County Clerk's Office in Deed Liber 213 at Page 374; thence running around said excepted parcel, the following three courses and distances: (1) South 35 degrees 54 minutes West 50.00 feet to a iron pin set, (2) North 45 degrees 18 minutes West 60.00 feet to an iron pin set, and (3) North 35 degrees 54 minutes East 50.00 feet, partially along a stone wall, to a 60 penny spike set at the corner of stone walls, thence running generally along a stone wall evidencing the southwesterly bounds of lands now or formerly of Ross (Deed Liber 761 at Page 70), North 46 degrees 10 minutes West 124.50 feet to an iron pin found in the center of said stone wall at the most westerly corner of said Ross Parcel; thence continuing along the approximate center of said stone wall, running along the southwesterly bounds of lands now or formerly of Schmidt (Deed Liber 826 at Page 259), North 43 degrees 58 minutes West 152.73 feet to an iron pin set in the center of said stone wall at the most easterly corner of lands now or formerly of Kinch (Deed Liber 438 at Page 261, Parcel Number 1); thence running along the southerly bounds of said lands of Kinch, the following three courses and distances: (1) South 63 degrees 22 minutes West 159.26 feet, generally along traces of old wire fence, to a wood stake found at the northeasterly end of a section of stone wall, (2) South 76 degrees 13 minutes West 18.50 feet, generally along a stone wall, and (3) North 56 degrees 47 minutes West 89.90 feet, generally along a stone wall, to a "X" mar cut in rock; thence running along the easterly bounds of Kinch Lane, not a public road, South 24 degrees 52 minutes West 134.20 feet to a wood stake found at the most

northerly corner of lands of Bachrach and Waschitz (Deed Liber 1054 at Page 79); thence running along the northeasterly bounds of said Bachrach and Waschitz Parcel, South 53 degrees 21 minutes East 119.50 feet to an iron pin set at the most easterly corner of said Bachrach and Waschitz Parcel; thence running along the easterly bounds of said Bachrach and Waschitz Parcel, South 33 degrees 48 minutes West 162.34 feet to a rail road spike set on the approximate northeasterly bounds of said West Broadway; thence running along said approximate northeasterly bounds of West Broadway, South 54 degrees 48 minutes East 519.31 feet, to the point or place of beginning, containing 5.36 Acres of land to be the same more or less.

SUBJECT TO HIGHWAY USE-DEDICATION OF RECORD, AND ANY EASEMENTS OF RECORD.

BEARING are as the magnetic needle pointed in January of 1984.

TOGETHER with all the improvements, tenements and appurtenances now or hereafter erected on the property, and all easements, rents, royalties, mineral, oil and gas rights and profits, water, water rights, and water stock, all leasehold rights of any kind, and all fixtures now or hereafter attached to or used in connection with the property, including, but not limited to, all plumbing, bath tubs, water heaters, water closets, sinks, ranges, stoves, refrigerators, dishwashers, washers, dryers, awnings, screens, blinds, shades, storm windows, storm doors, antennas, attached floor coverings, trees and plants; all of which including replacements and additions thereto, shall be deemed to be and remain a part of the property covered by this instrument; and all payments at any time owing to the Borrower by virtue of any sale, lease, transfer, conveyance or condemnation of any part thereof or interest therein--all of which are herein collectively referred to as the "Property".

THIS MORTGAGE is also intended as a Financing Statement covering fixtures which are affixed or which may become affixed to the above-described property. The types of collateral covered hereby are described in the preceding paragraph.

TO HAVE AND TO HOLD the property unto the Government and its assigns forever in fee simple.

The Borrower covenants that Borrower is lawfully seized of the estate hereby conveyed and has the rights to mortgage, grant, and convey the Property, and that the Borrower will warrant and defend generally the title to the Property against all claims and demands, subject to easements and restrictions of record.

THIS MORTGAGE SHALL SECURE (a) payment of the Note in accordance with its terms, including any extensions or renewals thereof, whenever the Note is held by either the Government or by an uninsured holder; (b) repayment, with interest, of any payments, advances and expenditures made by the Government pursuant to the terms of this or any other Loan Instrument; and (c) performance of every covenant and agreement of the Borrowers contained in this or any other Loan Instrument.

LIBER 1347 PAGE 018

The Borrower, for itself, its successors and assigns, WARRANTS the title to Property to the Government against the lawful claims of all persons whose claims are not based upon liens, encumbrances, easements or reservation specified above.

The Borrower, for itself, its successors and assigns, COVENANTS AND AGREES as follows:

(1) Borrower will promptly pay any indebtedness secured by this instrument when due.

(2) Borrower will indemnify the Government against any loss which the Government may incur as a result of making payments to an insured holder of the Note after the Borrower's default.

(3) Borrower will pay the Government any fees or other charges required under regulations of the Farmers Home Administration.

(4) Borrower will pay when due all taxes, liens, judgments, encumbrances and assessments lawfully attaching to or assessed against the Property, and, without demand, will also provide the Government with proof of those payments.

(5) Borrower will pay the Government for any expenses necessary or incidental to (a) the protection of the lien or priority of any Loan Instrument and to (b) the enforcement of or compliance with the provisions of any Loan Instrument. "Expenses" includes (without limitation) costs of evidence of title, surveys, recording fees, attorneys' fees and trustees' fees, as well as court costs and expenses of advertising, selling and conveying the Property or any portion of it.

(6) Borrower will use the loan evidenced by the Note solely for the purposes authorized by the Government. In the event that all or some portion of the loan funds will be used to pay for the construction of the facility described in the Loan Agreement, Borrower agrees to hold such funds in trust as required by Section 13 of the New York Lien Law.

(7) Borrower will keep the Property insured as required by the Government and will deliver the originals of all insurance policies to the Government for safekeeping.

(8) Borrower will comply with all laws, ordinances and regulations affecting the Property and the conduct of Borrower's business operations.

(9) Borrower will maintain the Property in good repair and make any repairs the Government may require.

(10) Borrower will operate the Property in a good and efficient manner and will comply with management plans and practices which the Government may prescribe from time to time.

LIBER 1347 PAGE 019

(11) Borrower will not abandon the Property; effect waste, lessening or impairment of the Property; or cut, remove or lease any timber, gravel, oil, gas, coal or other minerals.

(12) Borrower will not (except in the ordinary course of business) lease, assign, sell, transfer or encumber the Property or any nonexpendable part thereof, voluntarily or otherwise, either in whole or in part, without the prior written consent of the Government.

(13) The property described herein was obtained or improved through Federal financial assistance. This property is subject to the provisions of Title VI of the Civil Rights Act of 1964 and the Rehabilitations Act of 1973 and the regulations issued pursuant thereto for so long as the property continues to be used for the same or similar purpose for which financial assistance was extended or for so long as the purchaser owns it, whichever is longer. So long as the property is used for Rural Rental Housing or similar purposes, borrower will not convey, transfer or dispose of any interest in the land without including a covenant running with the land in the instrument of conveyance which obligate the Grantee, Transferee or Successor in interest to comply with such statutory provisions.

(14) If at any time it shall appear to the Government that the Borrower may be able to obtain a loan from a production credit association, a federal land bank, or other responsible cooperative or private credit source, at reasonable rates and terms for loans for similar purposes and periods of time, the Borrower will, upon the Government's request, apply for and accept a loan in sufficient amount to pay the Note and any other indebtedness secured by this instrument and to pay for any stock necessary to be purchased in a cooperative lending agency in connection with such a loan.

(15) The Government may require the Borrower to make additional monthly payments equal to one-twelfth of the estimated taxes, assessments, insurance premiums and other charges upon the Property.

(16) The Government and its agents may inspect the Property at reasonable times to ascertain whether the Borrower is fulfilling its obligations under this or any other Loan Instrument.

(17) The Government may at any time pay as advances for the Borrower's account any amounts which the Borrower is obligated to pay under any Loan Instrument. The Government may exercise this right regardless of whether the Note is insured and regardless of whether advances exceed the face amount of the Note.

(18) All advances by the Government pursuant to the terms of this or any other Loan Instrument shall bear interest at the rate borne by the Note which bears the highest interest rate. Advances, together with interest accruing on them, shall be immediately due and payable by the Borrower at the place designated in the latest Note. Advances by the Government shall neither relieve the Borrower of its obligation to pay nor cure any default under any Loan Instrument.

LIBER 1347 PAGE 020

(19) Except to the extent specified by the Government in writing, the Government in its sole discretion may grant an extension of the time for payment or modification of amortization of the indebtedness secured by any Loan Instrument, release any party from liability to the Government, release portions of the Property from the lien of any Loan Instrument, and waive any other Government right under any Loan Instrument without affecting the lien or priority of any Loan Instrument, or the liability of the Borrower or any other party for payment of the indebtedness secured by any Loan Instrument.

(20) The Government will not be bound by any present or future state laws (a) providing for valuation, appraisal, homestead or exemption of the Property; (b) prohibiting or restricting an action for deficiency judgment or limiting the judgment amount which may be awarded; (c) prescribing any statute of limitations; (d) allowing any right of redemption or possession following any foreclosure sale, or (e) limiting the conditions the Government may impose by regulation as a condition of approving a transfer of the Property to a new borrower. THE BORROWER WAIVES THE BENEFIT OF ANY SUCH STATE LAWS.

(21) Should the Borrower DEFAULT on any of its obligations under any Loan Instrument, merge, dissolve, be declared bankrupt or insolvent, or make an assignment for the benefit of creditors, without Notice the Government may (a) accelerate the entire indebtedness secured by this instrument by declaring it immediately due and payable; (b) charge the Borrower's account for any reasonable expenses which the Government may pay or incur to maintain and repair the Property; (c) process, operate and rent the Property; (d) have a receiver appointed for the Property who may exercise the usual powers of receivers in similar cases; (e) foreclose this and any other Loan Instrument and sell the Property; (f) enforce any and all other rights and remedies provided in the Loan Instruments or by future or present laws.

(22) Upon default by Borrower as aforesaid, the Government may foreclose this instrument as authorized or permitted by the laws then existing of the jurisdiction where the property is situated and of the United States of America, on terms and conditions satisfactory to the government, including but not limited to foreclosure by (a) statutory power of sale, or (b) advertisement and sale of the property at public auction to the highest bidder in one or more parcels at the Government's option and at the time and place and in the manner and after such notice and on terms required by statute or determined by the Government if not contrary to statute, or (c) written agreement hereafter made between Borrower and the Government.

(23) Proceeds of a foreclosure sale pursuant to any Loan Instrument shall be applied in the following order to the payment of: (a) costs and expenses incident to enforcing or complying with the provisions of any Loan Instrument; (b) any prior liens required by law or a competent court to be paid; (c) all indebtedness to the Government secured by this instrument; (d) inferior liens of record required by law or a competent court to be paid; (e) at the Government's option, any other indebtedness

LIBER 1347 PAGE 021

of the Borrower owing to or insured by the Government, and (f) any balance to Borrower. At foreclosure or other sale of all or any part of the Property, the Government and its agents may bid and purchase as a stranger and may pay the Government's share of the purchase price by crediting such amount on any debts of Borrower owing to or insured by the Government, in the order prescribed above.

(24) If the Government is the successful bidder at a foreclosure sale under any Loan Instrument, any portion of the purchase price not owed to a third party may be paid by crediting that amount on any debts of the Borrower which are owed to or insured by the Government.

(25) The rights and remedies provided in this instrument are cumulative and shall be in addition to every other remedy now or hereafter existing at law, in equity, by statute or by regulation.

(26) A waiver, amendment, release or modifications of this instrument may be effected only by a writing which has been duly executed by the Government and shall not be established by conduct, custom or course of dealing.

(27) This instrument shall be governed by federal law, and shall be subject to the present regulations of the Farmers Home Administration and to its future regulations not inconsistent with the express provisions of this instrument.

(28) Default under this instrument shall constitute a default under any other security instruments of the Borrower held or insured by the Government and default under any other security instrument constitutes default under this instrument.

(29) If any provision of this instrument or application thereof to any person or circumstances is held invalid, such invalidity will not affect other provisions or applications of the instrument which can be given effect without the invalid provision or application, and to that end the provisions hereof are declared to be severable.

(30) Notices to the Borrower shall be sent to its address as shown on the first page of this instrument. Notices to the Government shall be addressed to the Farmers Home Administration, United States Department of Agriculture, Room 871, James M. Hanley Federal Building, 100 South Clinton Street, Syracuse, New York 13260.

Notices shall be sent by certified mail (postage prepaid) unless otherwise required by law. The Government and the Borrower may designate any further or different addresses to which subsequent notices shall be sent.

AND THAT, as construed in Section 254 of the Real Property Law of New York, except to any extent that it conflicts with express provisions of this mortgage:

LIBER 1347 PAGE 022

(31) Borrower will pay the indebtedness, as hereinbefore provided;

(32) Borrower warrants the title to the property;

(33) The holder of this mortgage, in any action to foreclose it, shall be entitled to the appointment of a receiver.

(34) The borrower and any successors in interest agree to use the housing for the purpose of housing people eligible for occupancy as provided in Section 515 of Title V of the Housing Act of 1949 and FmHA regulations then extant during this 20 year period beginning the date of this mortgage (Deed of Trust). No person occupying the housing shall be required to vacate prior to the close of such 20 year period because of early repayment. The borrower understands that should an unsubsidized project be converted to subsidized within 15 years from the date the last loan on the project is closed, that the period will be increased by 5 years. The borrower will be released during such period from these obligations only when the Government determines that there is no longer a need for such housing or that Federal or other financial assistance provided to the residents of such housing will no longer be provided. A tenant may seek enforcement of this provision as well as the Government.

(35) The Borrower acknowledges that the Note is given as evidence of a Loan to construct or improve a Rural Rental or Labor Housing project pursuant to Title V of the Housing Act of 1949. It will provide funds from its own resources to pay any cost to complete such construction or improvements after the maximum debt limit (as determined pursuant to regulations of the Government) has been reached.

IN WITNESS WHEREOF, the Borrower has caused this Mortgage to be executed by its Partner(s) who hereunto set(s) his/their hand(s) and seal(s) as of the date first written above.

Signed, sealed and delivered in the presence of:

_____
WITNESS

_____
WITNESS

MONTICELLO, NEW YORK, VILLAS LIMITED PARTNERSHIP, a limited partnership

BY: _____
THOMAS B. MARSHALL, GENERAL PARTNER

BY: _____
STEVE P. GASKINS, III, GENERAL PARTNER

LIBER 1347 PAGE 023

ACKNOWLEDGEMENT

STATE OF NEW YORK     )
        ORANGE        ) ss:
COUNTY OF ~~SULLIVAN~~ )

On this 27th day of January, 1988, before me                    ,
Notary Public, personally appeared Steve P. Gaskins III, known to me, who
being duly sworn, did say that he is a general partner of a Limited
Partnership that executed the within instrument and acknowledged to me
that such Limited Partnership executed the same.

(NOTARIAL SEAL)

_____
              Notary Public

DAVID B. GUBITS 1596925
Notary Public, State of New York
Qualified in Rockland County
Commission Expires November 30, 1987

My commission expires: _____ .


ACKNOWLEDGEMENT BY ATTORNEY IN FACT

STATE OF NEW YORK     )
        ORANGE        ) ss:
COUNTY OF ~~SULLIVAN~~ )

On this 27th day of January, 1988, before me personally came
Steve P. Gaskins III, to me known to be the individual described in and
who executed the foregoing instrument, and to me known to be the
attorney-in-fact of Thomas B. Marshall, the individual described in and
who by his said attorney-in-fact, executed the same and acknowledged that
he executed said instrument as the act and deed of said Thomas B.
Marshall, by virtue of a power of attorney dated the 18th day of
December, 1985 and ~~to be~~ recorded in the Sullivan County Clerk's Office
~~simultaneously herewith.~~ on March 12, 1987 in Liber 1273 of mortgages
at page 277.
(NOTARIAL SEAL)

_____
              Notary Public

DAVID B. GUBITS 1596925
Notary Public, State of New York
Qualified in Rockland County
Commission Expires November 30, 1987

My commission expires: 2/2/88

A TRUE RECORD ENTERED 2/2/88 AT
12:46 P.M.   JOE PURCELL, CLERK

CE 3197 / 1265 / 335

32 &c.

RECEIVED
1988 FEB -2 PM 12:46
SULLIVAN COUNTY CLERK

STATE OF NEW YORK
SULLIVAN COUNTY ss:
RECORDED ON THE _February_ DAY
OF _February_ 19_88_ AT _12:46_
O'CLOCK P.M. IN LIBER _1347_
OF _Mtgs._ AT PAGE _5_
AND EXAMINED.

_[signature]_ CLERK

R.R.
DAVID B GUBITS, ESQ
P.O. BOX 367
WALDEN, N.Y. 12586